```
                    UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
                           WESTERN DIVISION
```

EDDIE PARKER                                                    PLAINTIFF

VERSUS                              CIVIL ACTION NO. 5:07cv212-DCB-JMR

CLAIBORNE COUNTY MISSISSIPPI and
CLAIBORNE COUNTY FIRE DEPARTMENT                               DEFENDANTS

## OPINION AND ORDER

This matter comes before the Court on defendants' Motion for Summary Judgment [**docket entry no. 44**]. Having carefully considered the Motion, memoranda in support and opposition thereof, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. BACKGROUND AND PROCEDURAL HISTORY

The plaintiff in this case is Eddie Parker ("Parker"), a former employee of the Claiborne County Fire Department ("CCFD"). The defendants are Claiborne County, Mississippi, and the Claiborne County Fire Department ("Defendants"). The instant litigation arises out of the termination of Parker's employment with the CCFD.

Parker began his employment with the CCFD in 1983. During his time at the CCFD, Parker held various positions within the department, including fire inspector, training officer, and, most recently, lieutenant. Although the position of fire chief had changed hands several times during Parker's tenure, at the time of the events giving rise to this litigation, Parker worked under the

supervision of Chief Kelvin Shaifer ("Chief Shaifer").

When Chief Shaifer joined the CCFD, he implemented a policy that all firemen be clean-shaven. This model policy, taken from the National Fire Protection Codes and Standards, was implemented in order to ensure the proper functioning of the self-contained breathing apparatus ("SCBA"), an essential piece of equipment worn by firefighters to prevent injury or death caused by smoke inhalation. Specifically, a clean-shaven face is necessary for the SCBA to properly seal against the face.

Despite Chief Shaifer's orders, Parker did not comply with this new policy. Instead, he provided a doctor's note explaining that he could not adhere to the policy because of a medical condition which prevents him from shaving all the hair from his face.[1] A few months later, Chief Shaifer again instructed Parker, this time in writing, that he was required to adhere with the shaving policy. After receiving this write-up, on April 4, 2006, Parker phoned Mr. Miller, the county administrator to discuss the shaving policy. According to Parker, Miller indicated that a doctor's note would excuse Parker from complying with the shaving

---

[1] The plaintiff has not provided any specific information regarding this alleged medical condition, but describes it as a "profile", a condition which results in his skin becoming extremely irritated when closely shaven. The defendants have identified the condition as most likely being pseudofolliculitis barbae, a condition whereby completely shaving beard hairs results in ingrown hairs and skin irritation. (Defs.' Mot. Summ. J. at 3, n. 1.) (citing www.merck.com/mmpe/print/sec10/ch124/ch124d.html).

policy. The plaintiff further testified that he had a joint meeting with Miller and Chief Shaifer to discuss the situation but that no resolution was reached.

After meeting with Miller and Chief Shaifer, Parker went to Chief Shaifer's office to discuss the matter further. The parties' accounts of this encounter differ. The defendants' recitation of the events paints the plaintiff as upset and confrontational. According to the defendants, the plaintiff banged on Chief Shaifer's door and entered his office without permission, interrupting a meeting between Chief Shaifer and a guest. Quite differently, the plaintiff indicates that he followed the standard procedure by knocking hard on Chief Shaifer's door and entering when the door was unlocked. Additionally, although the plaintiff admits that he was angry and that he may have cursed, he disagrees that he acted insubordinately.

When Chief Shaifer was unwilling to meet with Parker, Parker asked for permission to go home for a little while. Parker states that he did not tell Chief Shaifer why he wished to go home, but now says that his reason for leaving was to take some medication. After Parker left the fire department, an unknown person contacted the police department and reported that Parker had gone home to get a gun. When Parker returned to the fire station, the Police Chief was there, as were Parker's mother and brother. No gun was recovered from Parker or his vehicle.

Some background information is helpful to set the scene in Claiborne County at the time of the events giving rise to this litigation. Just prior to Parker's encounter with Chief Shaifer, another disgruntled Claiborne County employee had committed a series of shootings, resulting in the injury and death of several other county employees. Following this series of tragic events, Claiborne County implemented a "zero-tolerance" policy towards displays of offensive conduct or language toward the public, a supervisor, or a fellow employee. (Defs.' Mot. Summ. J., ex. C, ex. 3 therein)

On April 4, 2006, citing this zero-tolerance policy, Chief Shaifer terminated Parker's employment for his behavior earlier that day. Specifically, Chief Shaifer indicated that Parker was terminated for insubordination and disrespect, as well as for displaying horrific and terrifying behavior.

After an unsuccessful appeal to the county's grievance committee, Parker filed a claim with the Equal Employment Opportunity Commission ("EEOC"), wherein he alleged age discrimination, discrimination based on a physical disability, and retaliation. The EEOC found that the record did not support Parker's claims and dismissed his case. The EEOC did, however, issue Parker a right-to-sue letter.

On September 14, 2007, Parker instituted this action in the Circuit Court of Claiborne County, Mississippi. Parker's complaint

4

alleges violations of the Age Discrimination in Employment Act of 1967 ("ADEA") and the Americans with Disabilities Act of 1990 ("ADA"), retaliation in violation of Title VII of the Civil Rights 1964, and intentional and negligent infliction of emotional distress. The defendants removed the case to this Court on November 26, 2007. On October 13, 2008, following discovery, the defendants filed their Motion for Summary Judgment. This motion now is before the Court.

## II. ANALYSIS

*A. Summary Judgment Standard*

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).[2] The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

---

[2] "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

> *B. Defendants are Entitled to a Judgment as a Matter of Law on Plaintiff's Retaliation Claim*

The Court first clarifies the issues before it. As previously described, the plaintiff's complaint alleges violations of the ADEA and the ADA, retaliation in violation of Title VII, and intentional

and negligent infliction of emotional distress.  The defendants have moved for summary judgment on all of these claims.  In his response to the defendants' motion, Parker concedes all but his retaliation claim; therefore, the Court addresses only this single remaining issue.

Parker's retaliation claim is based on his alleged participation in another county employee's discrimination suit.  Although the Court does not have before it detailed factual information regarding the other suit, the general premise has been gathered from the plaintiff's deposition testimony.  According to Parker, Catherine Coleman, a former secretary with the CCFD, had been terminated from employment because of her age.  Subsequently, Coleman, who was transferred to another position within the county, filed a claim with the EEOC.  Parker posits that he personally witnessed some age-discriminatory remarks made by Chief Shaifer and that because of this he was a likely witness in Coleman's discrimination case.  Parker's potential participation in Coleman's case, Parker argues, was the reason Chief Shaifer fired him.

To establish a prima facie case of retaliation, Parker must show that: (1) "[he] participated in an activity protected by Title VII; (2) [his] employer took an adverse employment action against [him] and (3) a causal connection exists between the protected activity and the materially adverse action." <u>Aryain v. Wal-Mart Stores Texas LP</u>, 534 F.3d 473, 484 (5th Cir. 2008).  In their

7

motion and rebuttal, the defendants argue that Parker's retaliation claim must fail first because he did not engage in a "protected activity" and second because he has not shown a causal link between his activity and his termination.

The Court begins by examining whether Parker has shown that he engaged in protected activity. "An employee has engaged in activity protected by Title VII if [he] has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." Long v. Eastfield College, 88 F.3d 309, 319 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)). It is the defendants' position that since Parker did not actually oppose Chief Shaifer's comments and did not actually participate in Coleman's discrimination case Parker did not engage in protected activity. The Court agrees. Parker has not provided any evidence that he opposed Chief Shaifer's alleged discriminatory remarks about Catherine Coleman. Nor has he shown that he testified in or otherwise participated in Coleman's case. Accordingly, Parker has not satisfied the requirement that he engaged in a protected activity.

Not only has Parker failed to show that he was engaged in activity protected under Title VII, but he also has failed to establish a causal link between any alleged protected activity and his termination. "A 'causal link' is established when the evidence

shows that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'" Amie v. El Paso Independent School District, 2007 WL 3316340 at *7 (quoting Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 684 (5th Cir. 2001)). "The proffered evidence must be sufficient to permit a reasonable fact finder to conclude that the decision maker had actual knowledge of the protected activity." Id. (citations omitted). Here, Parker has not provided any evidence, other than his own speculation, that Chief Shaifer was aware of the possibility that he may be involved in Coleman's case. Indeed, the plaintiff acknowledges in his deposition that he does not know if Chief Shaifer knew of his potential participation. Therefore, even assuming that Parker had engaged in protected activity, his speculation, without more, that Chief Shaifer was aware of his potential participation in Coleman's case is insufficient to satisfy the third element of a retaliation claim.

Finally, even assuming that he has established a prima facie case for retaliation, Parker's claim remains without merit. "[O]nce the plaintiff establishes a prima facie case [of retaliation], the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action." Id. (citing McMillan v. Rust College, Inc., 710 F.2d 1112, 1116 (5th Cir. 1983)). Here, Claiborne County had instituted a zero-tolerance policy toward displays of offensive

9

conduct or language toward a supervisor.  The facts of the case support the defendant's position that the plaintiff was terminated for violating this policy.  First, in an affidavit, Chief Shaifer states that the plaintiff barged into his office and stated that he was "pissed", a statement which the plaintiff does not deny.  Furthermore, the parties agree that an unknown person contacted the police when Parker left the premises.  This fact supports Parker's termination for offensive conduct because his actions evidently were such that a person who was uninvolved in the encounter felt threatened enough to contact legal authorities.  Considering these things, the Court finds that the defendants have shown a non-retaliatory reason for Parker's termination.  Accordingly, since Parker has failed to make the requisite showing as to each of the elements of a prima facie case of retaliation and since the defendants have shown a valid reason for Parker's termination, the Court finds the defendants' motion for summary judgment to be well-taken.

### III. CONCLUSION AND ORDER

Based upon the foregoing analysis and authorities,

**IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment [**docket entry no. 44**] is **GRANTED** as to all of the plaintiff's claims.

**IT IS FURTHER ORDERED** that defendants Claiborne County,

10

Mississippi, and the Claiborne County Fire Department shall be **DISMISSED WITH PREJUDICE.**

A separate final judgment in compliance with Rule 58 of the Federal Rules of Civil Procedure shall be entered, dismissing this action with prejudice.

**SO ORDERED**, this the 7th day of January 2009.

                                   s/ David Bramlette

                                   **UNITED STATES DISTRICT JUDGE**